IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

MEIQIONG W.,[1]                                    1:20-cv-01179-BR

              Plaintiff,                           OPINION AND ORDER

v.

COMMISSIONER, SOCIAL
SECURITY ADMINISTRATION,

              Defendant.

**BETSY R. SHEPHERD** (OSB #172670)
425 Riverwalk Manor Drive
Dallas, GA 30132
(505) 480-5630

              Attorney for Plaintiff

**SCOTT ASPHAUG**
Acting United States Attorney
**RENATA GOWIE**
Assistant United States Attorney
1000 S.W. Third Avenue, Suite 600
Portland, OR  97204-2902
(503) 727-1021

---

    [1] In the interest of privacy this Court uses only the first
name and the initial of the last name of the nongovernmental
party in this case.

1 - OPINION AND ORDER

**MICHAEL W. PILE**
Acting Regional Chief Counsel
**BENJAMIN J. GROEBNER**
Special Assistant United States Attorney
Social Security Administration
701 Fifth Avenue, Suite 2900, M/S 221A
Seattle, WA 98104
(206) 615-2531

      Attorneys for Defendant

**BROWN, Senior Judge.**

      Plaintiff Meiqiong W. seeks judicial review of a final decision of the Commissioner of the Social Security Administration (SSA) in which he denied Plaintiff's applications for Disability Insurance Benefits (DIB) and Supplemental Security Income (SSI) under Titles II and XVI of the Social Security Act. This Court has jurisdiction to review the Commissioner's final decision pursuant to 42 U.S.C. § 405(g).

      For the reasons that follow, the Court **AFFIRMS** the decision of the Commissioner and **DISMISSES** this matter.

## ADMINISTRATIVE HISTORY

      Plaintiff filed applications for DIB and SSI on December 11, 2017, alleging a disability onset date of October 1, 2016. Tr. 171-77, 180-88.[1] The applications were denied initially and on reconsideration. An Administrative Law Judge (ALJ) held a

---

      [1] Citations to the official transcript of record filed by the Commissioner on October 20, 2020, are referred to as "Tr."

2 - OPINION AND ORDER

hearing on October 10, 2019.  Tr. 29-45.  Plaintiff was represented at the hearing.  Plaintiff and a vocational expert (VE) testified.

The ALJ issued a decision on October 24, 2019, in which he found Plaintiff is not disabled and, therefore, is not entitled to benefits.  On May 19, 2020, that decision became the final decision of the Commissioner when the Appeals Council denied Plaintiff's request for review.  Tr. 1-6.  *See Sims v. Apfel*, 530 U.S. 103, 106-07 (2000).

## BACKGROUND

Plaintiff was born on November 26, 1970, and was 48 years old at the time of the hearing.  Tr. 234.  Plaintiff has past relevant work as a cook helper.

Plaintiff alleges disability due to bipolar disorder, obsessive compulsive disorder, post-traumatic stress disorder (PTSD), anxiety, depression, and a mood disorder.  Tr. 47-48.

Except when noted, Plaintiff does not challenge the ALJ's summary of the medical evidence.  After carefully reviewing the medical records, this Court adopts the ALJ's summary of the medical evidence.  *See* Tr. 19-21.

## STANDARDS

The initial burden of proof rests on the claimant to

establish disability.  *Molina v. Astrue*, 674 F.3d 1104, 1110 (9th Cir. 2012).  To meet this burden a claimant must demonstrate her inability "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which . . . has lasted or can be expected to last for a continuous period of not less than 12 months."  42 U.S.C. § 423(d)(1)(A).  The ALJ must develop the record when there is ambiguous evidence or when the record is inadequate to allow for proper evaluation of the evidence.  *McLeod v. Astrue*, 640 F.3d 881, 885 (9th Cir. 2011)(quoting *Mayes v. Massanari,* 276 F.3d 453, 459-60 (9th Cir. 2001)).

The district court must affirm the Commissioner's decision if it is based on proper legal standards and the findings are supported by substantial evidence in the record as a whole.  42 U.S.C. § 405(g).  *See also Brewes v. Comm'r of Soc. Sec. Admin.*, 682 F.3d 1157, 1161 (9th Cir. 2012).  Substantial evidence is "relevant evidence that a reasonable mind might accept as adequate to support a conclusion."  *Molina*, 674 F.3d. at 1110-11 (quoting *Valentine v. Comm'r Soc. Sec. Admin.*, 574 F.3d 685, 690 (9th Cir. 2009)).  "It is more than a mere scintilla [of evidence] but less than a preponderance."  *Id.* (citing *Valentine*, 574 F.3d at 690).

The ALJ is responsible for determining credibility, resolving conflicts in the medical evidence, and resolving

ambiguities.  *Vasquez v. Astrue*, 572 F.3d 586, 591 (9th Cir. 2009).  The court must weigh all of the evidence whether it supports or detracts from the Commissioner's decision.  *Ryan v. Comm'r of Soc. Sec.*, 528 F.3d 1194, 1198 (9th Cir. 2008).  Even when the evidence is susceptible to more than one rational interpretation, the court must uphold the Commissioner's findings if they are supported by inferences reasonably drawn from the record.  *Ludwig v. Astrue*, 681 F.3d 1047, 1051 (9th Cir. 2012).  The court may not substitute its judgment for that of the Commissioner.  *Widmark v. Barnhart*, 454 F.3d 1063, 1070 (9th Cir. 2006).

## DISABILITY ANALYSIS

### I.   The Regulatory Sequential Evaluation

The Commissioner has developed a five-step sequential inquiry to determine whether a claimant is disabled within the meaning of the Act.  *Parra v. Astrue*, 481 F.3d 742, 746 (9th Cir. 2007).  *See also* 20 C.F.R. § 404.1520.  Each step is potentially dispositive.

At Step One the claimant is not disabled if the Commissioner determines the claimant is engaged in substantial gainful activity.  20 C.F.R. §§ 404.1520(a)(4)(i), 416.920(a)(4)(i). *See also Keyser v. Comm'r of Soc. Sec.*, 648 F.3d 721, 724 (9th Cir. 2011).

At Step Two the claimant is not disabled if the
Commissioner determines the claimant does not have any medically
severe impairments or combination of impairments.  20 C.F.R.
§§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii).  *See also Keyser*, 648
F.3d at 724.

At Step Three the claimant is disabled if the Commissioner
determines the claimant's impairments meet or equal one of the
listed impairments that the Commissioner acknowledges are so
severe as to preclude substantial gainful activity.  20 C.F.R.
§§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii).  *See also Keyser*, 648
F.3d at 724.  The criteria for the listed impairments, known as
Listings, are enumerated in 20 C.F.R. part 404, subpart P,
appendix 1 (Listed Impairments).

If the Commissioner proceeds beyond Step Three, he must
assess the claimant's residual functional capacity (RFC).  The
claimant's RFC is an assessment of the sustained, work-related
physical and mental activities the claimant can still do on a
regular and continuing basis despite her limitations.  20 C.F.R.
§§ 404.1520(e), 416.920(e).  *See also* Social Security Ruling
(SSR) 96-8p.  "A 'regular and continuing basis' means 8 hours a
day, for 5 days a week, or an equivalent schedule."  SSR 96-8p,
at *1.  In other words, the Social Security Act does not require
complete incapacity to be disabled.  *Taylor v. Comm'r of Soc.
Sec. Admin.*, 659 F.3d 1228, 1234-35 (9ᵗʰ Cir. 2011)(citing *Fair*

6 - OPINION AND ORDER

*v. Bowen,* 885 F.2d 597, 603 (9th Cir. 1989)).

At Step Four the claimant is not disabled if the Commissioner determines the claimant retains the RFC to perform work she has done in the past.  20 C.F.R. §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv).  *See also Keyser*, 648 F.3d at 724.

If the Commissioner reaches Step Five, he must determine whether the claimant is able to do any other work that exists in the national economy.  20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v).  *See also Keyser*, 648 F.3d at 724-25.  Here the burden shifts to the Commissioner to show a significant number of jobs exist in the national economy that the claimant can perform.  *Lockwood v. Comm'r Soc. Sec. Admin.*, 616 F.3d 1068, 1071 (9th Cir. 2010).  The Commissioner may satisfy this burden through the testimony of a VE or by reference to the Medical-Vocational Guidelines set forth in the regulations at 20 C.F.R. part 404, subpart P, appendix 2.  If the Commissioner meets this burden, the claimant is not disabled.  20 C.F.R. §§ 404.1520(g)(1), 416.920(g)(1).

## **ALJ'S FINDINGS**

At Step One the ALJ found Plaintiff did not engage in substantial gainful activity after her October 1, 2016, alleged onset date.  Tr. 15.

At Step Two the ALJ found Plaintiff has the severe

impairments of anxiety and depression.  Tr. 15.  The ALJ found
Plaintiff's Autism-Spectrum Disorder is not a medically
determinable impairment.  Tr. 16.

At Step Three the ALJ concluded Plaintiff's medically
determinable impairments during the relevant period do not meet
or medically equal one of the listed impairments in 20 C.F.R.
part 404, subpart P, appendix 1.  Tr. 126.  The ALJ found
Plaintiff has the RFC to perform a full range of work at all
exertional levels with the following limitations:  Plaintiff only
"can perform simple, routine tasks, and . . . tolerate occasional
contact with coworkers and the general public."  Tr. 17-18.

At Step Four the ALJ found Plaintiff cannot perform her past
relevant work.  Tr. 22.

At Step Five the ALJ found Plaintiff can perform jobs that
exist in significant numbers in the national economy.  Tr. 22.
Accordingly, the ALJ found Plaintiff is not disabled.


**DISCUSSION**

Plaintiff contends the ALJ erred when he (1) partially
rejected Plaintiff's testimony; (2) partially rejected the
opinion of Craig Reed, M.D., examining psychiatrist; and
(3) found at Step Five that Plaintiff can perform jobs that exist
in significant numbers in the national economy.

I.   **The ALJ did not err when he partially rejected Plaintiff's testimony.**

Plaintiff alleges the ALJ erred when he partially rejected Plaintiff's testimony.  The ALJ engages in a two-step analysis to determine whether a claimant's testimony regarding subjective pain or symptoms is credible.

"First, the ALJ must determine whether the claimant has presented objective medical evidence of an underlying impairment 'which could reasonably be expected to produce the pain or other symptoms alleged.'"  *Garrison v. Colvin*, 759 F.3d 995, 1014 (9th Cir. 2014)(quoting *Lingenfelter v. Astrue*, 504 F.3d 1028, 1035-36 (9th Cir. 2007)).  The claimant need not show her "impairment could reasonably be expected to cause the severity of the symptom she has alleged; she need only show that it could reasonably have caused some degree of the symptom."  *Garrison*, 759 F.3d at 1014 (quoting *Smolen v. Chater*, 80 F.3d 1273, 1282 (9th Cir. 1996)).  A claimant is not required to produce "objective medical evidence of the pain or fatigue itself, or the severity thereof."  *Garrison*, 759 F.3d at 1014.

If the claimant satisfies the first step of this analysis and there is not any affirmative evidence of malingering, "the ALJ can reject the claimant's testimony about the severity of her symptoms only by offering specific, clear and convincing reasons for doing so."  *Garrison*, 759 F.3d at 1014-15.  *See also Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 883 (9th Cir. 2006)(same).

General assertions that the claimant's testimony is not credible are insufficient. *Parra v. Astrue*, 481 F.3d 742, 750 (9ᵗʰ Cir. 2007). The ALJ must identify "what testimony is not credible and what evidence undermines the claimant's complaints." *Id*. (quoting *Lester v. Chater*, 81 F.3d 821, 834 (9ᵗʰ Cir. 1995)).

At the hearing Plaintiff engaged in the following exchange with her attorney through a translator:

> Q.   Would you please describe to us what prevents you from working?
>
> A.   She said when goes [to work], she gets super anxious and she doesn't like the [*sic*] a lot of times. Very difficult to, to be with other people, to work with other people. She also doesn't remember things, so she always forgot about what she's supposed to do or when to come in. She just mentioned that her mental illness prevented her to stay focused.
>
> * * *
>
> Q.   Did you say you have trouble interacting with people in, in a work setting?
>
> A.   She said it's mainly because of the language barrier that caused irritation or friction between she and her coworker.
>
> Q.   Do your mental health issues also cause problems between you and coworkers or anyone else for that matter?
>
> INT: She couldn't really answer my question. I kept asking her if her mental illness affect[s] her communication and interaction with others. She kept saying that she only does her work and she . . . doesn't socialize with other coworkers and she said when she get[s] home, . . . meal[s] were prepared, so she just [ate] her . . . food and went on with her evening.

10 - OPINION AND ORDER

Q.   Okay, thank you.

INT: So she couldn't quite like answer me directly.
Tr. 37-38.  Plaintiff stated she did not get into arguments with
her coworkers nor did she forget "what kind of task she [was]
supposed to do" when she worked at Safeway, but she did forget
"what time or what day to go in."  Tr. 39.  Plaintiff testified
her job at Safeway ended because "the chef can take care of
everything, so they eliminated her position."  Tr. 40.  Plaintiff
stated she was taking English as a Second Language (ESL) classes
and had been taking those classes for more than two years.
Plaintiff stated she takes the bus to class in the morning and
"sometimes" home in the afternoon.  Tr. 39.

Although the ALJ found Plaintiff's "medically determinable
impairments could reasonably be expected to cause the alleged
symptoms," Plaintiff's statements "concerning the intensity,
persistence and limiting effects of these symptoms are not
entirely consistent with the medical evidence and other evidence
in the record."  Tr. 18.  The ALJ noted Winifred Ju, Ph.D., and
Joshua Boy, Psy.D., reviewing psychologists, found Plaintiff
could perform simple tasks with frequent superficial interaction
with coworkers and occasional contact with the public.  Tr. 18,
52, 71.  The ALJ also noted the record reflects Plaintiff's
symptoms were reduced significantly after "prolonged periods of
medication adherence."  Tr. 19.  For example, at some point

11 - OPINION AND ORDER

before September 2016 Plaintiff stopped taking her medications regularly and her symptoms increased.  On September 1, 2016, Melissa Lynn, P.M.H.N.P., treating mental-health nurse, noted Plaintiff was "doing better back on Abilify, calmer, . . . not talking to herself at home, happier."  Tr. 324.  Plaintiff continued to take her medication regularly, and on January 23, 2017, P.M.H.N.P. Lynn noted Plaintiff was "doing well, mood stable."  Tr. 307.  Plaintiff reported she was "[a]ttending ESL class and enjoying school, meeting people from different countries.  [Her] [s]ister note[d] that [Plaintiff] has been much happier and upbeat, excited about school and new opportunities." Tr. 307.  In April 2017, P.M.H.N.P. Lynn noted Plaintiff's "mood [was] stable with current [medication] regimen, [Plaintiff] notes she can tell a difference if she misses a dose."  Tr. 299.  In July 2017 Plaintiff reported to P.M.H.N.P. Lynn that she was "doing well on [her] current regimen, mood stable."  Tr. 286. Plaintiff stated she was "getting [an] adequate amount of sleep, [her] appetite [was] stable, [and she was] feeling happy.  [She was] [u]p in the morning walking to school, [and] will be taking next level of ESL classes."  Tr. 286.  Plaintiff's sister told P.M.H.N.P. Lynn that Plaintiff "does housework and gardening" after school.  Tr. 286.  On April 9, 2018, however, Jessica Diaz, M.D., treating physician, reported Plaintiff stopped taking her medications, and Plaintiff's sister stated she had "noticed

[Plaintiff's] behavior and mood has changed.  More energy, decreased sleep, . . . irritable/easily agitated, tangential thinking/easily distracted." Tr. 403-04.  Dr. Diaz noted on examination that Plaintiff had "slightly flattened affect and poor eye contact (different than [Plaintiff's] baseline). . . . Normal speech cadence/speech pattern, but easily distractible with tangential thinking."  Tr. 405.

On June 21, 2018, Plaintiff's sister reported to Craig Reed, M.D., treating psychiatrist, that Plaintiff was not taking her Abilify because her sister "overlooked it" when she picked up Plaintiff's other medications.  Tr. 487.  Plaintiff reported she was having trouble sleeping, had excess energy, and was taking "very long walks (3 hours) 'for exercise.'"  Tr. 487. Plaintiff's sister reported Plaintiff was "showering in the dark, talking to herself, and was moody."  Tr. 487.  Plaintiff's sister noted Plaintiff's behavior had improved when her medication compliance improved, but this was a step backwards.  Dr. Reed prescribed Plaintiff's medication in "bubble-pacs in an effort to confirm/improve compliance."  Tr. 488.  On September 18, 2018, Plaintiff's sister reported to Dr. Reed that Plaintiff had been taking her medication regularly, and she was "happier, more engaged and more agreeable."  Tr. 507.  The record reflects Plaintiff continued to take her medication regularly, and in December 2018 Plaintiff reported "being more active and

13 - OPINION AND ORDER

performing better." Tr. 512. Plaintiff's sister reported
Plaintiff was "getting progressively better[,] displaying better
understanding of experiences and of her environment[,] . . . [and
was] more happy and socially engaged," but occasionally confused.
Tr. 512. On February 8, 2019, Plaintiff reported to
Q.M.H.A. Lucinda Baldovino, treating mental-health associate,
that she and her sister were "engag[ing] in activities sch as
volunteering, and engaging in the Chinese New Year festival."
Tr. 800. On April 5, 2019, Plaintiff's sister advised
P.M.H.N.P. Chloe Griffith that Plaintiff was "so much better."
Tr. 521. Plaintiff's sleep, appetite, and moods were improved,
and she was "more engaged." Tr. 521. Also on April 5, 2019,
Q.M.H.A. Baldovino noted Plaintiff "skills trained at the library
so [Plaintiff] can learn how to navigate community resources
independently." Tr. 811. Q.M.H.A. Baldovino noted Plaintiff
"spoke English very well and was able to communicate with her and
the library staff member, to be able to check out books
appropriately" and that Plaintiff took public transit home from
the library after her training. Tr. 811. On May 23, 2019,
Plaintiff's sister reported to Q.M.H.A. Baldovino that Plaintiff
was "doing great in the community and has gained new English
phrases that she has picked up by being around others in the
community." Tr. 813. On June 6, 2019, Q.M.H.A. Baldovino noted
Plaintiff "has gone to the dentist, library, and pharmacy

14 - OPINION AND ORDER

independently and without any concerns. . . . [Plaintiff] . . . enjoys talking more, being open, and feels better overall while doing things more independently." Tr. 815.  On June 27, 2019, Plaintiff reported to P.M.H.N.P. Chloe Griffith that she was "doing 'really good.'"  Tr. 528.  Plaintiff's sister stated Plaintiff "goes on hikes with [her], goes to church[,] . . . [and is] gaining independence."  Tr. 528.  On August 26, 2019, Q.M.H.A. Baldovino noted Plaintiff continued to take her medications and to improve and that Plaintiff and her sister were traveling to China for a month.  The Ninth Circuit has held "[i]mprovement with conservative treatment is a convincing reason to discount an allegation of disabling symptoms." *Randall v. Saul*, No. 19-35984, 2021 WL 531546, at *2 (9th Cir. Feb. 12, 2021).  *See also Warre v. Comm'r of Soc. Sec. Admin*., 439 F.3d 1001, 1006 (9th Cir. 2006)("Impairments that can be controlled effectively with medication are not disabling for the purpose of determining eligibility for SSI benefits.")(citations omitted)).

The Court concludes on this record that the ALJ did not err when he partially rejected Plaintiff's testimony regarding the intensity, persistence, and limiting effects of her symptoms during the relevant period because the ALJ provided clear and convincing reasons supported by substantial evidence in the record for doing so.

**II.  The ALJ did not err when he partially rejected Dr. Reed's opinion.**

15 - OPINION AND ORDER

Plaintiff asserts the ALJ erred when he partially rejected the opinion of Dr. Reed, treating psychiatrist.

"Because plaintiff filed her application[] after March 27, 2017, new regulations apply to the ALJ's evaluation of medical opinion evidence." *Linda F. v. Saul*, No. C20-5076-MAT, 2020 WL 6544628, at *2 (W.D. Wash. Nov. 6, 2020). "Under the [new] regulations, an ALJ 'will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s)[.]'" *Linda F.*, 2020 WL 6544628, at *2 (quoting 20 C.F.R. §§ 404.1520c(a), 416.920c(a)). "A prior administrative medical finding is a finding, other than the ultimate determination about [disability], about a medical issue made by . . . agency medical and psychological consultants at a prior level of review . . . in [a] claim based on their review of the evidence." 20 C.F.R. § 404.1513(a)(5). In addition, the new regulations rescinded SSR 06-03p in which the Social Security Administration "explained how [it] considers opinions and other evidence from sources who are not acceptable medical sources . . . . The [new] rules revised [this] polic[y]. . . . For example, in claims filed on or after March 27, 2017, the final rules state that all medical sources, not just acceptable medical sources, can make evidence that [it] categorize[s] and consider[s] as medical opinions." Rescission of Soc. Sec. Rulings 96-2p, 96-5p, & 06-3p, SSR 96-2P

2017 WL 3928298, at *1 (S.S.A. Mar. 27, 2017).

"The ALJ must articulate and explain the persuasiveness of a [medical] opinion or prior finding based on 'supportability' and 'consistency,' the two most important factors in the evaluation. *Linda F.*, 2020 WL 6544628, at *2 (quoting 20 C.F.R. §§ 404.1520c(a), (b)(1)-(2)). "The 'more relevant the objective medical evidence and supporting explanations presented' and the 'more consistent' with evidence from other sources, the more persuasive a medical opinion or prior finding." *Linda F.*, 2020 WL 6544628, at *2 (quoting 20 C.F.R. §§ 404.1520c(c)(1)-(2)).

> The ALJ may but is not required to explain how other factors were considered, as appropriate, including relationship with the claimant (length, purpose, and extent of treatment relationship; frequency of examination); whether there is an examining relationship; specialization; and other factors, such as familiarity with other evidence in the claim file or understanding of the Social Security disability program's policies and evidentiary requirements.

*Linda F.*, 2020 WL 6544628, at *2 (quoting 20 C.F.R. §§ 404.1520c(b)(2), (c)(3)-(5)). *But see* 20 C.F.R. § 404.1520c(b)(3)(when an ALJ finds two or more opinions about the same issue are equally supported and consistent with the record but not exactly the same, the ALJ must articulate how these "other factors" were considered). Thus, the "new regulations require the ALJ to articulate how persuasive the ALJ finds medical opinions and to explain how the ALJ considered the supportability and consistency factors." *Linda F.*, 2020 WL

17 - OPINION AND ORDER

6544628, at *2 (citing 20 C.F.R. §§ 404.1520c(a), (b);
416.920c(a), (b)). "At the least, this appears to necessitate
that an ALJ specifically account for the legitimate factors of
supportability and consistency in addressing the persuasiveness
of a medical opinion." *Linda F.*, 2020 WL 6544628, at *2.
Finally, the Court must also "continue to consider whether the
ALJ's analysis has the support of substantial evidence." *Linda
F.*, 2020 WL 6544628, at *2 (citing 82 Fed. Reg. at 5852).

On August 22, 2018, Dr. Reed completed a Mental Residual
Functional Capacity Assessment form in which he noted he had seen
Plaintiff "on two occasions over the last two months." Tr. 430.
Dr. Reed stated Plaintiff had been prescribed a number of
medications, but she "denies beneficial effect while asserting
that function is adequate & satisfactory." Tr. 430. Dr. Reed
noted Plaintiff displayed "constricted, dysphoric affect,
reserved behavior, [illegible] communication. Reportedly
disorganized through (including word salad), [and] report of
attentiveness to unseen stimuli." Tr. 430. Dr. Reed described
Plaintiff's prognosis as "poor, due to resistence to accurate
assessment & non-compliance with psychotherapy." Tr.430.
Dr. Reed was asked to assess 20 areas of Plaintiff's mental
functioning, but he indicated 16 of them were "not rateable on
available evidence." Tr. 431-32. Dr. Reed stated Plaintiff is
"markedly limited" in her "ability to interact appropriately with

18 - OPINION AND ORDER

the general public," her "ability to ask simple questions or
request assistance," her "ability to accept instructions and
respond appropriately to criticism from supervisors," and her
"ability to set realistic goals or make plans independently of
others."  Tr. 431-32.  Dr. Reed also noted Plaintiff would miss
"more than four days per month" of work due to her impairments.
Tr. 431.  Finally, Dr. Reed noted "language barrier and
incomplete familiarity with cultural differences contributed to
difficulty evaluating" Plaintiff.  Tr. 432.

The ALJ stated Dr. Reed's statements "offer[ed] little . . .
probative value in determining" Plaintiff's RFC and found those
statements to be unpersuasive.  Tr. 21.  The ALJ also noted
Dr. Reed failed to explain his opinion that Plaintiff would miss
more than four days of work per month.  Moreover, Dr. Reed had
seen Plaintiff only twice, and Plaintiff had only been
consistently compliant with her medications for two months at the
time Dr. Reed completed the form.  The ALJ noted Plaintiff had
consistent improvement in the months that followed Dr. Reed's
evaluation due to medication compliance.  As noted, by June 6,
2019, Plaintiff had "gone to the dentist, library, and pharmacy
independently and without any concerns. . . .  [Plaintiff] . . .
enjoys talking more, being open, and feels better overall while
doing things more independently."  Tr. 815.  On June 27, 2019,
Plaintiff reported she was "doing 'really good.'"  Tr. 528.

Plaintiff's sister stated Plaintiff "goes on hikes with [her],
goes to church[,] . . . [and is] gaining independence."  Tr. 528.

The Court concludes on this record that the ALJ did not err
when he partially rejected Dr. Reed's opinion because the ALJ
provided clear and convincing reasons supported by substantial
evidence in the record for doing so.

**III.  The ALJ did not err at Step Five.**

Plaintiff asserts the ALJ erred at Step Five when he found
Plaintiff can perform jobs that exist in significant numbers in
the national economy.  Specifically, Plaintiff contends the ALJ
erred when he identified jobs in the national economy that have
Reasoning Level Two, which, according to Plaintiff, exceeds her
capabilities as assessed by the ALJ in her RFC.  Plaintiff also
asserts the ALJ erred when he failed to include in his
hypothetical to the VE all of Plaintiff's limitations as
identified by both Dr. Reed and Plaintiff.

As noted, the Commissioner must determine whether the
claimant is able to do any other work that exists in the national
economy if he reaches Step Five of the Regulatory Sequential
Evaluation.  20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v).
*See also Keyser*, 648 F.3d at 724-25.  Here the burden shifts to
the Commissioner to show a significant number of jobs exist in
the national economy that the claimant can perform.  *Lockwood v.
Comm'r Soc. Sec. Admin.,* 616 F.3d 1068, 1071 (9th Cir. 2010).

The Commissioner may satisfy this burden through the testimony of a VE or by reference to the Medical-Vocational Guidelines set forth in the regulations at 20 C.F.R. part 404, subpart P, appendix 2.  If the Commissioner meets this burden, the claimant is not disabled.  20 C.F.R. §§ 404.1520(g)(1), 416.920(g)(1).

### A.    Reasoning Level

Plaintiff asserts the ALJ erred when he found Plaintiff could perform jobs that require Reasoning Level Two.  The Dictionary of Occupational Titles (DOT) separates reasoning levels into six categories, two of which are relevant here:

> Level One:    Apply commonsense understanding to carry out simple one- or two-step instructions.  Deal with standardized situations with occasional or no variables in or from these situations encountered on the job.

> Level Two:    Apply commonsense understanding to carry out detailed but uninvolved written or oral instructions.  Deal with problems involving a few concrete variables in or from standardized situations.

DOT, App. C, 1991 WL 688702.  The VE identified three jobs that Plaintiff could perform, all of which require Reasoning Level Two.  In his assessment of Plaintiff's RFC the ALJ found Plaintiff could perform only "simple, routine tasks."  Tr. 18.  Plaintiff contends this limitation is consistent only with Reasoning Level One.

The Ninth Circuit, however, has not held a claimant's

21 - OPINION AND ORDER

limitation to simple, routine tasks indicates a claimant is
limited to jobs with Reasoning Level One.  In fact, the Ninth
Circuit has held a "claimant's limitation to 'simple and routine
work tasks' is 'inconsistent with the demands of level-three
reasoning' because the plaintiff's residual functional capacity
was more consistent with *Level 2* than Level 3 Reasoning."
*Zavalin v. Colvin*, 778 F.3d 842, 846-47 (9th Cir. 2015)(emphasis
added)(quotation omitted).  District courts within the Ninth
Circuit have reached the same conclusion.  *See Gilbert v. Colvin*,
6:14-cv-00394-AA, 2015 WL 1478441, at *6-*7 (D. Or. Mar. 31,
2015)(collecting cases and concluding an ALJ's erroneous finding
that a treatment provider's "report 'does not support a finding
that [plaintiff] cannot perform complex tasks'" was harmless
because the ALJ relied on occupations that only required
Reasoning Level Two).

The Court concludes the limitation to "simple, routine
tasks" in the ALJ's assessment of Plaintiff's RFC is consistent
with Reasoning Level Two, and, therefore, the ALJ did not err at
Step Five when he relied on the VE's testimony that a significant
number of jobs exist in the national and regional economy that
Plaintiff can perform.

**B.    Hypothetical to the VE**

As noted, Plaintiff alleges the ALJ erred when he
failed to include all of Plaintiff's limitations in his

hypothetical to the VE.  Specifically, Plaintiff alleges the ALJ
failed to include limitations identified by Plaintiff in her
testimony and by Dr. Reed in his opinion.

        The Court has already concluded the ALJ did not err
when he rejected portions of limitations asserted by Plaintiff
and Dr. Reed.  On this record, therefore, the Court also
concludes ALJ did not err when he did not include those
limitations in his hypothetical to the VE.

### **CONCLUSION**

        For these reasons, the Court **AFFIRMS** the decision of the
Commissioner and **DISMISSES** this matter.

        IT IS SO ORDERED.

        DATED this 1st day of April, 2021.


                                /s/ Anna J. Brown
                        _____
                        ANNA J. BROWN
                        United States Senior District Judge

23 - OPINION AND ORDER